[No. C014019. Third Dist. June 29, 1993.]

DOROTHY BUSH, Plaintiff and Appellant, v.
PARENTS WITHOUT PARTNERS et al., Defendants and Respondents.

COUNSEL

Brislain, Zink & Lenzi and Albert J. Lenzi, Jr., for Plaintiff and Appellant.

Borton, Petrini & Conron, Tom Gifford, Halkides & Morgan, James C. Pappas and Arthur L. Morgan for Defendants and Respondents.

OPINION

**SPARKS, J.**—Plaintiff Dorothy Bush sustained personal injuries when she slipped and fell while dancing. She sued the organization sponsoring the

dance and the public agency owning the dance hall. The trial court granted summary judgment against plaintiff based upon her assumption of the risk. We shall reverse.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed a complaint for personal injury against the local and international chapters of Parents Without Partners (collectively, Parents Without Partners), sponsors of the event, and the Chico Area Recreation and Park District (District), owner of the Melody Dance Hall where the incident occurred. Plaintiff alleged general negligence and premises liability in her complaint. Parents Without Partners cross-complained against the District for indemnity.

The District and Parents Without Partners jointly moved for summary judgment based on the doctrine of reasonable implied assumption of risk.

The following facts are taken from the defendants' separate statements of undisputed facts which plaintiff agreed were not in dispute:

Before her accident, plaintiff attended at least 36 dances sponsored by Parents Without Partners at the Melody Dance Hall in the past 7 years. When plaintiff first arrived at the dance on the night in question she observed a substance on the dance floor which she thought to be Ivory Snow Flakes. She had seen this substance used on the floor on at least three prior occasions and was aware the substance made it easier for the dancer's foot to slide on the floor. At dances before her accident when she saw the substance of the floor, plaintiff would not dance until the floor was swept. On those prior occasions, the floor would continue to be swept on and off through the evening.

On the evening of her accident, plaintiff waited until the substance had been swept once before she danced. Although the floor had been swept once, the substance was still visible. Plaintiff slipped and fell while dancing. After her fall, she noticed the substance on her clothes.

In addition to plaintiff's response to the defendants' statement of undisputed facts, plaintiff filed her own statement of undisputed facts.[1] In that statement plaintiff asserted the following facts were undisputed:

---

[1] The summary judgment statute does not contemplate that the opposing party will file a statement of undisputed facts. Instead, it provides that "[t]he opposition papers shall include a separate statement which responds to each of the material facts contended by the moving party to be undisputed, indicating whether the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other

The substance was applied to the floor to make it easier to dance, not to make the floor slippery. Plaintiff never danced on the floor when she was able to see that the substance was on the floor.[2] Plaintiff had danced two dances without incident on the night of the accident and was dancing the third dance when she slipped and fell. She did not see any other person slip and fall that night before her accident.

The trial court granted the defendants' motion for summary judgment and this appeal followed.

## DISCUSSION

### I

### *Standard of Review*

"A motion for summary judgment 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) ▆ The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Consequently, "[a] defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail." (*Ibid.*)

▆ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. . . . First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. . . . [¶] Secondly, we determine whether the moving

material facts which the opposing party concedes are disputed." (Code Civ. Proc., § 437c, subd. (b).) The defendants, however, did not object to the unorthodox procedure used by plaintiff and we shall therefore construe each of plaintiff's claimed undisputed facts as an obverse claim that these facts are disputed for purposes of the summary judgment motion.

[2] This statement is somewhat inconsistent with the plaintiff's earlier admission that after the floor had been swept the first time the substance was still visible on the floor. In plaintiff's opposing papers, her counsel explains that in her deposition plaintiff "states that she saw the floor was swept *after* her arrival and *before* she danced. It was only after plaintiff believed the substance was removed from the dance floor that she participated in dancing." (Italics in original.)

party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], citations omitted.)

## II

### *Assumption of the Risk*

After the trial court entered judgment in this case, the Supreme Court issued two opinions concerning the doctrine of assumption of the risk. (*Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 203, 834 P.2d 696]; *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724].) As we recently explained, "[i]n *Ford*, Justice Arabian authored a lead opinion in which no other justice joined. In *Knight*, Justice George penned the lead opinion in which Chief Justice Lucas and Justice Arabian concurred. Justice Mosk provided a majority vote with a concurring opinion that agreed for the most part with the lead opinion. (*Knight, supra,* 3 Cal.4th at p. 321, conc. & dis. opn. of Mosk, J.) Because *Knight* commands a strong plurality, and because it speaks generally to the doctrine of implied assumption of the risk, we will follow *Knight* here." (*Davis* v. *Gaschler* (1992) 11 Cal.App.4th 1392, 1397 [14 Cal.Rptr.2d 679].)

According to the *Knight* court, the term "assumption of risk" applies to two different situations: "(1) those instances in which the assumption of risk doctrine embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk—the category of assumption of risk that the legal commentators generally refer to as 'primary assumption of risk'—and (2) those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of the duty—what most commentators have termed 'secondary assumption of risk.' " (*Knight,* supra, 3 Cal.4th at p. 308.) Thus, a primary assumption of risk bars a defendant's liability to the plaintiff for injury because the defendant has no legal duty to eliminate, or protect the plaintiff from, the risks.

"As a general rule," the *Knight* court went on, "persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ. Code, § 1714.) Thus, for example, a property owner ordinarily is required to use due care to eliminate dangerous conditions on his or her property. (See, e.g., *Rowland* v. *Christian*

(1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) In the sports setting, however, conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself. Thus, although moguls on a ski run pose a risk of harm to skiers that might not exist were these configurations removed, the challenge and risks posed by the moguls are part of the sport of skiing, and a ski resort has no duty to eliminate them. (See generally Annot. (1987) 55 A.L.R.4th 632.) In this respect, the nature of a sport is highly relevant in defining the duty of care owed by the particular defendant." (*Knight, supra,* 3 Cal.4th at p. 315.)

The plaintiff in *Knight* was injured in a touch football game when the defendant, another player, collided with her, knocked her over, and then stepped on her hand. Just before the play which resulted in the collision, the plaintiff had asked the defendant to be careful. (3 Cal.4th at p. 300.) The *Knight* court held this situation fell within the doctrine of primary assumption of risk because the risk of collision and injury is inherent in the game and the defendant's conduct was not "so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Id.* at p. 320.)

In our view, the recreational dancing at issue here is not a sport within the ambit of *Knight*. Duty is constricted in the sports setting because the activity involves inherent risks which cannot be eliminated without destroying the sport itself. Sky diving, to take an extreme example, is inherently dangerous and cannot be made completely safe without altering the nature of the sport. Thus, in the sports context duty is fashioned "in the process [of] defining the risks inherent in the sport not only by virtue of the nature of the sport itself, but also by reference to the steps the sponsoring business entity reasonably should be obligated to take in order to minimize the risks without altering the nature of the sport." (3 Cal.4th at p. 317.)

Indeed, it is an open question whether all sports are included within the limited duty of care rule of *Knight*. As the *Knight* court noted, the rule has been "in situations involving a wide variety of active sports, ranging from baseball to ice hockey and skating. Because the touch football game at issue in this case clearly falls within the rationale of this rule, we have no occasion to decide whether a comparable limited duty of care appropriately should be applied to other less active sports, such as archery or golf." (3 Cal.4th at p. 320, fn. 7.) But whatever the reach of the rule, it would seem to apply only when engaging "in a potentially dangerous activity or sport." (*Id.* at p. 311.) As we perceive it, recreational dancing is not such a dangerous activity. Consequently, this case involves what the *Knight* court calls "secondary assumption of risk." In this type of case—"where the defendant does owe a

duty of care to the plaintiff, but the plaintiff proceeds to encounter a known risk imposed by the defendant's breach of duty—the doctrine [of assumption of the risk] is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties." (*Id.* at p. 315.)

But even if the *Knight* rule governs recreational dancing, the trial court still erred in granting a summary judgment. Assuming for the sake of argument that falling is an inherent risk of social dancing (itself a dubious proposition), it does not follow that defendants have no duty when they increase the risk of falling by adding a slippery substance to the floor. Plaintiff argues that even if this case falls under primary assumption of risk, the defendants should be held liable because they increased the risk beyond that inherent in the activity. Plaintiff contends: "Here [the defendants] increased the risk by putting the slippery substance on the floor, and by sweeping it up, giving the false impression of safety, but doing so negligently so that it left some of the substance on the floor, which was not apparent to plaintiff when she began dancing." We agree. The *Knight* court warned: "Although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport. Thus, although a ski resort has no duty to remove moguls from a ski run, it clearly does have a duty to use due care to maintain its towropes in a safe, working condition so as not to expose skiers to an increased risk of harm. The cases establish that the latter type of risk, posed by a ski resort's negligence, clearly is not a risk (inherent in the sport) that is assumed by a participant." (3 Cal.4th at pp. 315-316.)

 Assuming that falling is a risk inherent in dancing (say by tripping on the feet of one's partner or by losing one's balance due to the nature of the steps required), the dance hall operators and owners still have a duty to maintain the dance floor in a safe and useable condition. They breach that duty by adding a substance to the floor which makes it too slippery and thus increases the dancers' risk of harm by falling. After all, the nature of recreational dancing is not altered if the owners do not spread Ivory Snow Flakes on the floor. Consequently, falling on a dance floor because the operator negligently placed a slippery substance on the floor "clearly is not a risk (inherent in the sport) that is assumed by a participant." (3 Cal.4th at pp. 315-316.)

It is no answer to say that dancing is inherently dangerous because some dancers have been known to injure themselves by falling. The same could be said of driving a vehicle or virtually any human activity. Once a defendant

has breached a duty of care, plaintiff is not precluded from recovery simply because she chose to encounter a known risk of harm. (*Knight, supra,* 3 Cal.4th at p. 311.) "Although every driver of an automobile is aware that driving is a potentially hazardous activity and that inherent in the act of driving is the risk that he or she will be injured by the negligent driving of another, a person who voluntarily chooses to drive does not thereby 'impliedly consent' to being injured by the negligence of another, nor has such a person 'impliedly excused' others from performing their duty to use due care for the driver's safety. Instead, the driver reasonably expects that if he or she is injured by another's negligence, i.e., by the breach of the other person's duty to use due care, the driver will be entitled to compensation for his or her injuries." (*Id.* at pp. 311-312.) In this case the defendants breached a duty of care to the dancers by spreading a slippery substance on the floor and thereby increasing the risk of falling. Whatever fault may be attached to plaintiff for dancing on the slippery floor, that fault does not operate as a complete bar to her recovery. Because defendants failed to establish as a matter of law that none of plaintiff's asserted causes of action can prevail, they were not entitled to summary judgment.

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court with directions to enter a new and different order denying defendants' motions for summary judgment. Plaintiff shall recover her costs on appeal.

Blease, Acting P. J., concurred.

**NICHOLSON, J.**—I respectfully dissent.

In my opinion, the type of activity in which the plaintiff engaged falls within the range of activities covered by the analysis in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]. While *Knight* involves an activity traditionally considered a "sport," the distinction between what is or is not a sport is unclear. In any event, the determination of whether primary assumption of risk applies does not hinge on whether the particular activity was a sport. "[T]he question of the existence and scope of a defendant's duty of care is a *legal* question which depends on the nature of the sport *or activity* in question and on the parties' general relationship to the activity, . . ." (*Id.* at p. 313, first italics in original, latter italics added.)

The activity in which the plaintiff voluntarily engaged here was participation in a dance in which a slippery substance is spread on the floor. A substance was commonly spread on the floor at the dances intentionally to

make the floor slippery and thereby enhance the activity. On and off through the evening of each dance, the floor was swept because, evidently, the first sweeping did not remove all of the substance. Thus, the activity was not just dancing; it was dancing on a slippery floor.

That the plaintiff did not like the fact the organizers spread the substance on the floor is beside the point. Likewise, her alleged perception the slippery substance had been swept up is irrelevant because "the duty approach . . . does not depend on the particular plaintiff's subjective knowledge or appreciation of the potential risk." (*Knight, supra,* 3 Cal.4th at p. 316.)

The lead opinion in *Ford* v. *Gouin* (1992) 3 Cal.4th 339, 345 [11 Cal.Rptr.2d 30, 834 P.2d 724], explains the courts should not impose liability which "might well have a generally deleterious effect on the nature of the sport . . . ." Imposing liability for the plaintiff's slip and fall here would effectively spell the discontinuation of slippery floor dancing, leaving only more docile forms of dancing. The majority effectively bans slippery floor dancing by finding a duty to the participant is breached when the dance hall operators and owners add a slippery substance to the floor. This is akin to forcing the ski resorts to remove all moguls by imposing liability on ski resorts for injuries caused by the moguls, a judicial imposition which *Knight* specifically disapproves. (3 Cal.4th at pp. 315-316, 318-319.)

I would find the plaintiff made a primary assumption of risk by participating in dancing on a slippery floor. Accordingly, I would affirm the judgment in favor of the defendants.