[No. F021454. Fifth Dist. Sept. 20, 1994.]

PATRICIA A. YANCEY, Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
SUNNY NEAL, Real Party in Interest.

## Counsel

Bowers, Thomas & Associates, Sherry B. Bowers and Terry J. Thomas for Petitioner.

No appearance for Respondent.

Curtis & Arata and Jack M. Jacobson for Real Party in Interest.

## OPINION

**THAXTER, J.**—Petitioner Patricia A. Yancey was struck on the head by a discus thrown by a classmate during a community college physical education class. This case raises an issue left unaddressed in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]: whether the limited duty of care applicable to coparticipants in such sports as football, baseball, and skating should be applied to coparticipants in a discus class.

### FACTS

According to the allegations in Yancey's complaint, she and Sunny Neal (defendant below) were participating in a physical education discus class at Modesto Community College. Yancey threw her discus and walked onto the field to retrieve it. Neal, who was throwing next, failed to observe the field before throwing the discus, failed to warn Yancey he was about to throw, and failed to observe elementary safety precautions before throwing the discus. His "carelessly" thrown discus struck Yancey's head causing physical and mental injuries.

### PROCEDURAL HISTORY

Yancey sued Neal and others alleging three causes of action for general negligence, products liability, and battery. Neal moved for summary judgment/summary adjudication contending there were no triable issues of fact regarding any of Yancey's claims. Yancey opposed the motion. The trial court granted summary adjudication of the products liability and battery causes of action, and Yancey does not challenge those rulings. The court also granted judgment on the pleadings on the negligence claim, concluding the primary assumption of risk doctrine as defined in *Knight* v. *Jewett, supra,* 3 Cal.4th 296 and *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724] applied to a coparticipant sport such as discus. Thus, Neal was not liable for ordinary careless conduct committed during the sport and would be liable to Yancey only if he engaged in reckless or intentional conduct totally outside the range of the ordinary activity involved in the sport.

Yancey amended her complaint to allege such conduct and also applied to this court for writ relief. We issued an order to show cause.

### DISCUSSION

1. *Standard of Review*

Because a defendant's motion for summary judgment necessarily includes a test of the sufficiency of the complaint, the trial court properly treated

Neal's motion as one for judgment on the pleadings. (*C.L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr.483].)[1] On review we must determine if the complaint states a cause of action as a matter of law. "A judgment on the pleadings is governed by the standards governing a judgment following a successful demurrer. [Citation.] A general demurrer admits the truth of all material facts alleged in the complaint." (*Ramirez* v. *USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757].)

## 2. *Whether Primary Assumption of Risk Applies Is a Question of Law*

According to *Knight* v. *Jewett, supra*, 3 Cal.4th 296, there are two types of assumption of risk: primary and secondary. Primary assumption of risk occurs when, by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury. Primary assumption of risk operates as a complete bar to the plaintiff's recovery. Secondary assumption of risk occurs when the defendant owes a duty of care to the plaintiff but the plaintiff knowingly encounters the risk of injury caused by defendant's breach of that duty. Secondary assumption of risk is merged into the comparative fault scheme, and the trier of fact may apportion the loss in relation to the responsibility of the parties. (*Id.* at pp. 314-315.)

Whether the defendant owed a duty of care to protect plaintiff from the risk that resulted in the injury turns on the nature of the activity in which the defendant was engaged and the relationship of the parties to the activity. (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 309.) The existence and scope of a defendant's duty of care is a legal question for the court to determine. (*Id.* at p. 313.) Thus, determinations regarding the elements on which the existence of the duty depends also present questions of law. When the injury occurs in a sports setting the court must decide whether the nature of the sport and the defendant's relationship to the sport—as coparticipant, coach, premises owner or spectator—support the legal conclusion of duty.

---

[1]Effective January 1, 1994, a procedure for motions for judgment on the pleadings was codified. (Code Civ. Proc., § 438.) Neal's motion was filed on January 10, 1994. Under Code of Civil Procedure section 438, subdivision (g), a motion for judgment on the pleadings may not be granted if a demurrer on the same grounds was either not made or was overruled, unless there has been an intervening material change in the applicable law. (See 1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1994) ¶¶ 7:212.15, 7:217, pp. 7-67, 7-67.1.) The record does not reveal whether Neal demurred to the complaint, so we cannot determine whether his motion met the new statutory requirements. In any event, petitioner has not asserted any procedural error, so we will review the trial court's order on the merits.

### 3. *Primary Assumption of Risk Does Not Bar an Ordinary Negligence Claim on the Facts Alleged Here*

 "As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person." (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 315.) In the sports setting, however, conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport. In this respect, the nature of the sport is highly relevant in defining the duty of care owed by the particular defendant. (*Ibid.*)

Generally, defendants have no legal duty to eliminate risks inherent in the sport itself, but they have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport. (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 315-316.) In some activities, the careless conduct of others is treated as an inherent risk of the sport, thus barring recovery by the plaintiff. For example, a baseball player may not recover if he or she is injured by a negligently thrown ball, and a basketball player may not recover for an injury caused by a negligently extended elbow. (*Id.* at p. 316.)

 Under *Knight,* whether Neal owed a duty of care to Yancey does not depend on Yancey's subjective knowledge or appreciation of the potential risk of being hit by a carelessly thrown discus. Rather it turns on whether Neal had a legal duty to avoid such conduct or to protect Yancey against that particular risk of harm. (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 316-317.)

#### A. *Neal's Relationship to the Sport*

The scope of Neal's duty of care to Yancey depends first on Neal's role in, or relationship to, the activity. (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 317.) The *Knight* court examined a number of cases involving sports-related injuries and noted that the duties of coparticipants were not necessarily the same as for other persons such as instructors, coaches, premises owners and business operators. (*Id.* at pp. 317-318.) In this case, both Yancey and Neal were participants in the activity at issue. Thus, we must determine whether one person participating in discus owes a duty of care to a coparticipant.

#### B. *Nature of the Sport*

 In the heat of sports like baseball or football, a participant's normal energetic conduct often includes accidentally careless behavior. Thus, public policy considerations militate against a duty of care in such sports.

"[V]igorous participation in such sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her

ordinary careless conduct. . . . [E]ven when a participant's conduct violates a rule of the game and may subject the violator to internal sanctions prescribed by the sport itself, imposition of *legal liability* for such conduct might well alter fundamentally the nature of the sport by deterring participants from vigorously engaging in activity that falls close to, but on the permissible side of, a prescribed rule." (*Knight* v. *Jewett, supra*, 3 Cal.4th at pp. 318-319, italics in original.) Therefore, a participant in an active sport breaches a legal duty of care to other participants only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport. (*Id.* at p. 320.) The *Knight* court applied its limited duty holding to a touch football game and suggested its application to a wide variety of other active sports, ranging from baseball to ice hockey and skating. But it left open the question whether a comparable limited duty of care should be applied to other "less active" sports, such as archery and golf. (*Id.* at p. 320, fn. 7.)

In the companion case, *Ford* v. *Gouin, supra*, 3 Cal.4th 339, the court applied the limited duty of care to the noncompetitive "cooperative" sport of waterskiing. The court reasoned, even when the water-skier is not involved in competition, the skier has undertaken "vigorous, athletic activity," and the ski boat driver operates the boat in a manner consistent with the excitement and challenge of the active conduct of the sport. Imposition of legal liability on a ski boat driver for ordinary negligence in making too sharp a turn or in pulling the skier too rapidly or too slowly would have the same kind of undesirable chilling effect on the driver's conduct as well as a generally deleterious effect on the nature of the sport of waterskiing as a whole. Additionally, imposing such liability might deter friends from voluntarily assisting one another in such potentially risky sports. (*Id.* at p. 345.)

The appellate courts have applied *Knight*'s limited duty of care to other recreational activities such as sailing (*Stimson* v. *Carlson* (1992) 11 Cal.App.4th 1201, 1205 [14 Cal.Rptr.2d 670] [sailor has no duty to protect fellow sailor from swinging boom, a risk inherent in the sport of sailing]), and horseback riding (*Harrold* v. *Rolling J Ranch* (1993) 19 Cal.App.4th 578, 587-588 [23 Cal.Rptr.2d 671] [while commercial operator of a horse-riding facility has a duty to supply horses that are not unduly dangerous, it is not obligated to supply "ideal" horses nor is it liable for injury resulting from a "horse behaving as a horse"]).

On the other hand, the limited duty was not applied to recreational dancing. (*Bush* v. *Parents Without Partners* (1993) 17 Cal.App.4th 322 [21 Cal.Rptr.2d 178].) The *Bush* court reasoned that the limited duty rule applies

when the plaintiff engages " 'in a potentially dangerous activity or sport.' " Duty is constricted in such settings because the activity involves inherent risks which cannot be eliminated without destroying the sport itself. For example, sky diving is inherently dangerous and cannot be made completely safe without altering the nature of the sport. Recreational dancing was not such a dangerous activity. (*Id.* at p. 328.)

With these authorities in mind, we turn to the question of whether the field event of discus is a sports activity in which the limited duty of care announced in *Knight* v. *Jewett* and *Ford* v. *Gouin* should apply.

Initially, we confess some difficulty with the Supreme Court's suggested distinction between "active" sports, such as baseball and football, and "less active" sports such as archery and golf. Although the distinction is fairly apparent as to the specific sports identified by the Supreme Court, it becomes much less clear when other sports or athletic activities are considered. Discus throwing, like many other activities (e.g., high jumping, long jumping, pole vaulting, javelin throwing, shot-putting, hammer throwing, weight lifting) involves an intense, even if temporally compressed, expenditure of physical energy. In that sense it can be described as an active sport. However, simply labeling a particular sport as "active" or "less active" for purposes of determining whether a participant has a duty to exercise ordinary care to his coparticipants will not satisfy us that the policy goals enunciated by the Supreme Court are being met.

Instead, we will attempt to apply the rationale behind the Supreme Court's rule that those participating in some sports activities have a limited duty of care. That rationale focuses on two inquiries. First, is the careless conduct of participants an inherent risk of the sport? Second, will imposition of a legal duty, with potential liability, alter the nature of the sport or chill participation in it? On the facts alleged in petitioner's complaint we see nothing requiring an affirmative answer to either question as a matter of law.

The discus, by its nature, involves launching a dangerous projectile. In the general sense, anyone within the area (whether a coparticipant, a coach, an official, a spectator, a television camera operator, etc.) is subject to some risk of being struck by the thrown discus. But the issue posed by the facts alleged in the petitioner's complaint is much more specific—i.e., is the careless conduct of a participant in throwing the discus without first ascertaining the target area is clear an inherent risk of the sport? We think not. Discus, unlike many sports (e.g., football, baseball, basketball, tennis, hockey, soccer, jai alai, volleyball, water polo, handball, racquetball, squash, etc.) does not require that a ball or other article be propelled towards other

participants or into a defined area occupied by other participants. Only one participant is directly engaged in the activity at any given moment. Nothing about the inherent nature of the sport requires that one participant who has completed a throw and is retrieving his or her discus should expect the next participant to throw without looking toward the landing area.[2]

Discus bears some similarity to golf. Neither sport has, as one of its objectives, the endangering of coparticipants. Anyone playing golf is subjected to a risk of being hit by a ball struck by another golfer on the course. Still, it is common knowledge that golfers check their intended target area and make sure it is clear before hitting a shot. They also warn persons who may be in danger of being hit with the time-honored cry of "Fore." Nothing in the facts alleged in Yancey's complaint support a legal conclusion that similar commonsense precautions are inappropriate in a physical education discus class.

Requiring discus participants to check the target area before launching a throw will not alter or destroy the inherent nature of the activity itself. At most, it may cause a slight delay before the thrower begins. Neither do we see any indication that "vigorous participation" in the discus likely would be chilled if legal liability were imposed on a participant for injury caused by his or her failure to observe that the target area is clear before throwing the discus. Finally, the potentially lethal nature of the projectile involved militates in favor of imposing a duty of care to persons in the expected target area. (Cf. *Knight* v. *Jewett, supra,* 3 Cal.4th at p. 320, fn. 7 [". . . because of the special danger to others posed by the sport of hunting, past cases generally have found the ordinary duty of care to be applicable to hunting accidents"].)

Neal argues that this analysis and conclusion fails to address the situation where a participant accidentally throws the discus outside the playing field or target area and strikes a coparticipant. His argument is correct but immaterial. We are considering a complaint alleging that petitioner, a coparticipant in the activity, was within the throwing field, and our holding is necessarily limited to that set of facts. We do not consider or decide whether a discus thrower owes a duty of care to coparticipants or others who foreseeably might be near, but outside, the target area when the discus is thrown.

Neal owed a duty of care to Yancey to ascertain that the target area was clear before he commenced his throw. The doctrine of primary assumption

---

[2]We emphasize that this case arose in the context of a physical education class. Conceivably, in a competitive meet evidence may show that custom or established rules of the event relieve a thrower from any obligation to make sure the landing area is clear of other persons before throwing.

of risk is inapplicable to the facts pleaded and does not bar Yancey's ordinary negligence cause of action. Whether Neal was negligent, causing Yancey's injuries, and whether Yancey was herself negligent, thereby contributing to her own injuries, are matters which must be determined by the trier of fact. Neal was not entitled to judgment on the pleadings.

## DISPOSITION

Let a writ of mandate issue directing the trial court to vacate its order granting judgment on the pleadings on Yancey's negligence cause of action. Costs to petitioner.

Ardaiz, P. J., and Stone (W. A.), J., concurred.