Filed 9/28/20

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CATHERINE WILLIAMS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COUNTY OF SONOMA,<br><br>    Defendant and Appellant. | A156819<br><br>(Sonoma County<br>Super. Ct. No. SCV-261355) |

Catherine Williams (Plaintiff) was injured when her bicycle struck a pothole on a road maintained by the County of Sonoma (County). Plaintiff sued the County and obtained a sizable judgment. In the published part of this opinion, we reject the County's argument that Plaintiff's claim should have been barred by the primary assumption of risk doctrine. In the unpublished portion we reject the County's remaining argument.

BACKGROUND

On July 10, 2016, Plaintiff and a friend began a 30-mile bicycle ride to train for an upcoming organized, noncompetitive, long-distance ride. As they biked down a hill on a road maintained by the County, they encountered a pothole measuring four feet long, three feet four inches wide, and four inches

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

1

deep. Plaintiff was traveling at least 25 miles per hour and, by the time she saw the pothole, was unable to avoid it. Her bicycle struck the pothole and she was thrown to the pavement, incurring serious injuries. The pothole had been reported to the County more than six weeks earlier, on May 25, 2016.

Plaintiff sued the County for dangerous condition of public property (Gov. Code, § 835).[1] A jury found for Plaintiff, allocating 70 percent of the fault to the County and 30 percent to Plaintiff. Plaintiff was awarded more than $1.3 million in damages. Before, during, and after trial—in a summary judgment motion, nonsuit motion, and motion for judgment notwithstanding the verdict—the County argued Plaintiff's claim was barred by the primary assumption of risk doctrine. Each time, the trial court rejected the argument.

DISCUSSION

I. *Primary Assumption of Risk*

The County argues Plaintiff's claim was barred by the primary assumption of risk doctrine. We disagree.

A. *Legal Background*

"The primary assumption of risk doctrine operates to limit the duty owed by the defendant." (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499 (*Shin*).) "Primary assumption of the risk arises when, as a matter of law and policy, a defendant owes no duty to protect a plaintiff from particular harms. [Citation.] Applied in the sporting context, it precludes liability for injuries arising from those risks deemed inherent in a sport; as a matter of law, others have no legal duty to eliminate those risks or otherwise protect a sports participant from them." (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161 (*Avila*) [fn. omitted].) A limited duty may

---

[1] All undesignated section references are to the Government Code.

2

nonetheless be owed: "[U]nder the primary assumption of risk doctrine, [certain defendants] have no duty to eliminate those risks [inherent in a recreational activity], but do owe participants the duty not to unreasonably increase the risks of injury beyond those inherent in the activity." (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1162 (*Nalwa*).) "[T]he question whether the defendant owed a legal duty to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport." (*Knight v. Jewett* (1992) 3 Cal.4th 296, 309 (*Knight*).)[2]

"The primary assumption of risk doctrine rests on a straightforward policy foundation: the need to avoid chilling vigorous participation in or sponsorship of recreational activities by imposing a tort duty to eliminate or reduce the risks of harm inherent in those activities." (*Nalwa, supra,* 55 Cal.4th at p. 1156.) "In a game of touch football, for example, there is an inherent risk that players will collide; to impose a general duty on coparticipants to avoid the risk of harm arising from a collision would work a basic alteration—or cause abandonment—of the sport." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 (*Kahn*).) "The primary assumption of risk doctrine, a rule of limited duty, developed to avoid such a chilling effect." (*Nalwa,* at p. 1154.) "The doctrine's parameters should be drawn according to that goal." (*Id.* at p. 1157.)

"When the facts are not disputed, application of the doctrine of primary assumption of risk is a legal question to be decided by the court." (*Childs v.*

---

[2] Although *Knight* was a plurality opinion, "[a] majority of th[e] court has since embraced the *Knight* approach." (*Avila, supra,* 38 Cal.4th at p. 161.)

*County of Santa Barbara* (2004) 115 Cal.App.4th 64, 69 (*Childs*).) "[I]n light of the jury's verdict in this case, . . . to the extent there are any factual conflicts underlying the legal question of duty, those factual conflicts must be resolved in favor of the [respondent]." (*M. W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 516–517.)

    B.    *Analysis*

We will assume, without deciding, the answers to two threshold issues. First, Plaintiff contends the primary assumption of risk doctrine does not apply to claims against public entities for dangerous conditions of public property.[3] Without deciding the issue (or whether Plaintiff is judicially estopped from raising it, as the County contends), we assume that the doctrine does apply in such cases. (See *Kim v. County of Monterey* (2019) 43 Cal.App.5th 312 [without analysis, applying primary assumption of risk doctrine to dangerous condition of public property claim]; *Bertsch v. Mammoth Community Water Dist.* (2016) 247 Cal.App.4th 1201 (*Bertsch*) [same].) Second, we assume Plaintiff's long-distance, recreational cycling constitutes the type of activity covered by the primary assumption of risk doctrine. (See *Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1221 ["organized, long-distance, group bicycle ride qualifies as a 'sport' for purposes of the application of the primary assumption of risk doctrine"].)[4]

---

[3] An amicus brief filed by the Consumer Attorneys of California also so argues.

[4] The County refers to Plaintiff's cycling activity as "high-speed cycling." Although Plaintiff may have been cycling at a high speed when she encountered the pothole while coming down a hill, the County fails to provide support—from the record or case law—that traveling at high speeds was an integral part of the activity. We note that, as the facts in this case illustrate, determining whether a given activity is subject to the primary assumption of

4

This brings us to whether the County owed Plaintiff a limited duty not to increase the inherent risks of her activity. The County points to authority contrasting "operators, sponsors and instructors in recreational activities," who "owe participants the duty not to unreasonably increase the risks of injury beyond those inherent in the activity" (*Nalwa, supra,* 55 Cal.4th at p. 1162), with persons or entities who do "not have a role in the sport or a relationship with the plaintiff," who owe no such duty (*Kahn, supra,* 31 Cal.4th at p. 1005). The County argues that, because it has no role in cycling or relationship with Plaintiff, it owes no duty to avoid unreasonably increasing the inherent risks of her cycling activity.

The County reads this authority too narrowly. Whether a defendant owes a duty not to increase an activity's inherent risks is a determination ultimately guided by the policy goals underlying the primary assumption of risk doctrine. "The primary assumption of risk doctrine articulates what kind of duty is owed and to whom." (*Shin, supra,* 42 Cal.4th at p. 499, italics omitted.) " 'The overriding consideration in the application of primary assumption of risk is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature.' " (*Childs, supra,* 115 Cal.App.4th at p. 70.) Thus, courts consider a

---

risk doctrine often involves difficult line drawing. For example, should an injured cyclist be barred from recovery just because the cycling was competitive, or simply recreational, rather than for transportation? (See *Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699, 706–707 [construing Civil Code § 846, it would be a "patently absurd result[]" if "an improved but dangerously rutted street would expose a city to liability to a bicyclist who commutes to work, even though it was under 'no duty' to keep the same street safe for the recreational rider right behind him"].) And where in that continuum do we fit "the commuter who, solely for exercise, pedals home by a circuitous route?" (*Id.* at p. 707, fn. 7.)

given defendant's role in the activity and relationship to the plaintiff to determine whether imposition of a duty would further the policy underlying the primary assumption of risk doctrine.

For example, in *Avila,* the Supreme Court considered what, if any, duty a school hosting an intercollegiate athletic competition owed to a visiting player. (*Avila, supra,* 38 Cal.4th at pp. 160–168.) Plainly, the school did not owe a duty to protect the baseball player from risks inherent in the sport. (*Id.* at p. 161.) The Supreme Court thus considered whether, under the primary assumption of risk doctrine, the school did owe a duty not to increase those inherent risks. (*Id.* at pp. 161–162.) The court reasoned that the benefits a school derives from intercollegiate sports justified imposition of the duty. (*Id.* at p. 162.) As relevant here, the court also considered whether imposing a duty not to increase inherent risks would impair the policy goals of the primary assumption of risk doctrine. (*Ibid.*) The court concluded that, because schools already owed such a duty to other parties, imposing it with respect to visiting players would not fundamentally alter the activity: "Schools and universities are already vicariously liable for breaches by the coaches they employ, who owe a duty to their own athletes not to increase the risks of sports participation. [Citation.] *No reason appears to conclude intercollegiate athletics will be harmed by making visiting players, necessary coparticipants in any game, additional beneficiaries of the limited duty not to increase the risks of participation.*" (*Ibid,* italics added.)

Similarly, in *Calhoon v. Lewis* (2000) 81 Cal.App.4th 108 (*Calhoon*), the plaintiff injured himself performing skateboarding tricks in his friend's driveway and sued the friend's parents. (*Id.* at pp. 111–112.) The Court of Appeal held the defendants, "as residential property owners" who had not "held out their driveway as an appropriate place to skateboard or in any

6

other way represented that the driveway was a safe place for skateboarding," owed no duty not to increase the inherent risks of skateboarding. (*Id.* at p. 117.) Again, as relevant here, the court relied on "policy reasons" supporting this conclusion: "Imposing a duty on residential owners to make property safe and guard against injuries to those voluntarily participating in the sport of skateboarding would change the nature of skateboarding. . . . Homeowners would be encouraged to close their property to skateboarders, decreasing the opportunity for skateboarders to participate in their sport." (*Ibid.*)

We thus consider whether imposition on the County of a limited duty not to increase the inherent risks of long-distance, recreational cycling would alter the fundamental nature of the activity. *Childs* is instructive. In that case, a child was injured riding a scooter over a section of county-owned sidewalk raised more than three inches above the adjoining section. (*Childs, supra,* 115 Cal.App.4th at p. 68.) The Court of Appeal reversed summary judgment for the county, primarily because there was a dispute of fact as to whether the child's scootering constituted an activity covered by the primary assumption of risk doctrine. (*Id.* at pp. 70–71.) As relevant here, the court also considered the relationship between the county and the child's activity to determine whether, even if the doctrine applied, the county owed a duty not to increase the inherent risks of scootering: "The County has statutory liability for injuries caused by dangerous conditions of its public property and must maintain sidewalks in a condition that does not create a hazard to foreseeable users. (Gov. Code, § 835.) That duty extends not just to pedestrians but also to other uses of sidewalks that are 'neither extraordinary nor unusual,' " including the child's scootering. (*Id.* at p. 74.) The court further found that "[u]plifted portions of the sidewalk create a

danger to all users of the sidewalk," not just those riding scooters, and "[t]he evidence does not establish that the method and cost of maintaining sidewalks against the danger of height differentials to riders of scooters would be materially different than that required to maintain sidewalks against the danger of height differentials to pedestrians." (*Id.* at pp. 74–75.) In other words, because the county owed a duty to other sidewalk users with respect to substantial height differentials in the sidewalk, imposition of a similar duty with respect to scooter users would not cause the county to take steps that would alter the fundamental nature of the activity.

Such is the case here. The County owes a duty to maintain safe roads for all foreseeable uses, including uses that fall outside of the primary assumption of risk doctrine: driving, riding a motorcycle, and bicycling as a means of transportation. (§ 835; *Childs, supra,* 115 Cal.App.4th at p. 74.) The County does not assert that the large pothole at issue here was not a hazard to these users as well as to long-distance, recreational cyclists like Plaintiff. Indeed, the County's road maintenance operations division manager testified "that size pothole would pose a hazard to traveling vehicles" and "[a]nything on the roadway," including cars, trucks, motorcycles, and bicycles. Thus, to the extent the County already owed a duty to other road users to repair the pothole, we see little risk that imposition of the same duty with respect to long-distance, recreational cyclists would lead the County to take steps that would fundamentally alter the nature of the activity.

The County argues that, when the only role of the defendant is as the property owner of the site of the accident, there is no duty not to increase inherent risks. For this proposition, the County relies on *Calhoon,* the skateboarding case discussed above, and *Bertsch*, another skateboarding case

8

in which the plaintiff sustained injuries after hitting "a small gap between the paved road and a cement collar surrounding a manhole cover" and sued the public agency "responsible for inspecting and maintaining the manhole cover" and the private community association that owned the road. (*Bertsch, supra,* 247 Cal.App.4th at pp. 1203–1204.) In each case, the court found the defendants had no duty not to increase the inherent risks of skateboarding. (*Calhoon, supra,* 81 Cal.App.4th at p. 117; *Bertsch,* at p. 1211.) We find these cases distinguishable because in neither case was there any indication that the defendants already had a duty—owed to persons not engaged in activities covered by the primary assumption of risk doctrine—to alter the identified condition of the property. In *Calhoon,* the property condition was a metal pipe located in a planter. (*Calhoon,* at pp. 111–112.) In *Bertsch,* it was "a small gap" between the road and a manhole cover. (*Bertsch,* at p. 1204.) To the extent these conditions posed a hazard, they apparently did so *only* with respect to a recreational activity covered by the primary assumption of risk doctrine. To require property owners to remove such a hazard would thus impose liability that the property owner was not otherwise subject to, and could prompt the owner to take measures that would alter the fundamental nature of the activity. This materially distinguishes these cases from the one before us.

The County argues it has limited resources and cannot eliminate every road hazard, noting that road conditions posing risks for recreational cyclists may not pose risks for other users. Our analysis does not impose a duty to eliminate such road hazards. There was testimony that because of its size, the pothole at issue presented a hazard to numerous types of users, not just long-distance, recreational cyclists. As we have explained, imposition of a duty in this case does not materially increase the County's burden. For this

9

reason, we find unpersuasive the County's contention that a duty finding will result in curtailing the speed limit for cyclists or other measures that would fundamentally alter the activity.[5]

In sum, because the County already owed a duty to other foreseeable users of the road to repair the pothole, the policy reasons underlying the primary assumption of risk doctrine support the conclusion that the County owes a duty not to increase the inherent risks of long-distance, recreational cycling.

There remains the question whether, by failing to repair the pothole at issue here, the County breached its duty not to increase the inherent risks of long-distance, recreational cycling. The County argues that falling and obstacles in the road are inherent risks of the activity. Even assuming that some falls and road obstacles are inherent risks, we disagree with the County's apparent contention that *all* are. As explained in *Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 365, even though "falling off a horse is an inherent risk of horseback riding[,] . . . if a person put a barrel in the middle of the Churchill Downs racetrack, causing a collision and fall, we would not say that person owed no duty to the injured riders, because falling is an inherent risk of horseback riding." (Accord, *Jimenez v. Roseville City School Dist.* (2016) 247 Cal.App.4th 594, 610 ["We accept that unwanted contact with the floor is an inherent risk of any kind of dancing, because as a matter of common experience any dancer may slip, or dancers may collide, causing a fall. [Citations.] But that does not mean every time a dancer contacts the floor, it is because of an inherent risk of dancing."]; *Yancey v.*

---

[5] For the same reasons, we reject the similar argument advanced by amicus curiae California State Association of Counties and League of California Cities.

10

*Superior Court* (1994) 28 Cal.App.4th 558, 565 ["The discus, by its nature, involves launching a dangerous projectile. In the general sense, anyone within the area . . . is subject to some risk of being struck by the thrown discus. But . . . is the careless conduct of a participant in throwing the discus without first ascertaining the target area is clear an inherent risk of the sport? We think not."].) By the same reasoning, a pothole so large as to "pose a hazard to . . . [a]nything on the roadway" is a road obstacle, but is not an inherent risk of long-distance, recreational cycling.

Other than suggesting that every road obstacle is an inherent risk of long-distance cycling, the County makes no argument that, if it owes a duty not to increase the inherent risks of long-distance cycling, its failure to repair this pothole did not breach that duty. Indeed, the County notes the split of authority as to whether such questions are ones of law or fact, but takes no position on the matter. (See *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 745 ["Some courts have held the jury decides whether the defendant's conduct increased the inherent risks of a sport. [Citations.] [¶] Other courts . . . have concluded that because the primary assumption of the risk doctrine involves issues of duty, the trial court determines both prongs of the duty analysis."].) Accordingly, the County has forfeited any claim that—as a matter of law or fact—its failure to repair this pothole did not constitute a breach of its duty not to increase the inherent risks of long-distance, recreational cycling. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 (*Tellez*) ["On appeal we need address only the points adequately raised by [appellant] in his opening brief on appeal."].) We thus need not address the issue.

In conclusion, we hold that (1) if the primary assumption of risk doctrine applies, the County nonetheless owes Plaintiff a duty not to increase the inherent risks of long-distance, recreational cycling, and (2) the County

11

has forfeited any claim that its failure to repair this pothole did not breach its duty. Accordingly, the County's argument that Plaintiff's claim is barred by the primary assumption of risk doctrine fails.

II.     *Jury Instructions*

In the alternative, the County contends the trial court erred in failing to instruct the jury on the primary assumption of risk doctrine. The County argues that, to the extent the primary assumption of risk doctrine did not apply as a matter of law, it was only because of the existence of disputed facts, such as Plaintiff's speed. The County argues the error was prejudicial because, if primary assumption of risk applied, it was a complete defense to Plaintiff's claim.

As an initial matter, the County's briefs fail to identify any specific instruction requested below. " '[A] party may not argue on appeal that the court failed to give a specific instruction when that party did not request such instruction [citations].' " (*Hurley v. Department of Parks & Recreation* (2018) 20 Cal.App.5th 634, 655.)

In any event, we have concluded the County owed Plaintiff a duty not to increase the inherent risks of long-distance cycling. As noted above, the County does not contend that, if it owes such a duty, its failure to repair the significant pothole at issue here did not breach that duty. Although the County notes that some courts have held such a question to be one of fact, for the jury to decide, the County makes no reasoned argument that the question is one of fact or that it was prejudiced by any failure to present it to the jury. Accordingly, the County's claim fails. (*Tellez, supra,* 240 Cal.App.4th at p. 1066 ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."].)

## DISPOSITION

The judgment is affirmed.  Plaintiff is awarded her costs on appeal.

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BURNS, J.

(A156819)

14

Superior Court of Sonoma County, No. SCV-261355, Hon. Jennifer V. Dollard, Judge.

Bruce D. Goldstein, County Counsel, Michael A. King, Deputy County Counsel; Greines, Martin, Stein & Richland, Timothy T. Coates, Nadia A. Sarkis for Defendant and Appellant.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendant and Appellant.

Alan Charles Dell'Ario; Cutter Law, Todd A. Walburg, Celine E. Cutter for Plaintiff and Respondent.

The Arkin Law Firm, Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.