130 Cal.Rptr.2d 198 (2003)
105 Cal.App.4th 1211
Christian MOSER, Plaintiff and Appellant,
v.
Joanne RATINOFF, Defendant and Respondent.
No. B153258.
Court of Appeal, Second District, Division Five.
January 31, 2003.
Review Denied April 23, 2003.
*199 Law Offices of Michael L. Oran, Michael L. Oran, Bel Air, and Kathy B. Seuthe, Encino; Law Offices of Garry S. Malin and Garry S. Malin, Tarzana, for Plaintiff and Appellant.
Barry Bartholemew & Associates, Michael A. Nork and Kathryn Albarian, Santa Monica, for Defendant and Respondent.
*200 MOSK, J.
Plaintiff and appellant Christian Moser (Moser) and defendant and respondent Joanne Ratinoff (Ratinoff) participated in an organized, long-distance bicycle ride on public highways involving hundreds of participants. Moser signed an "Accident Waiver and Release of Liability" form for the benefit of the event holders, sponsors and organizers in which Moser expressly assumed the risk of various injuries, including those caused by other participants. During the ride, Ratinoff swerved into Moser, causing him to crash and sustain injuries. Moser sued Ratinoff for general negligence. Ratinoff filed a motion for summary judgment on the ground that a collision between bicycle riders was an inherent risk in the ride, and if therefore the action was barred by the primary assumption of risk doctrine enunciated in Knight v. Jewett (1992) 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696 (Knight). Moser opposed the motion on the grounds that the primary assumption of risk doctrine did not apply because the collision was not an inherent risk of the activity and because Ratinoff's violation of provisions of the California Vehicle Code precluded application of the doctrine. The trial court granted summary judgment in Ratinoffs favor. We hold that the primary assumption of risk doctrine applies to the organized bicycle ride, and that a violation of a statute does not displace that doctrine. Accordingly, we affirm the summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Moser and Ratinoff collide during a bicycle ride
In February 1999, Moser registered to participate in the "Death Valley Double Century" bicycle ride, a 200-mile, noncompetitive bicycle ride on public highways. Hugh Murphy Productions organized the ride in which approximately 600 bicycle riders participated.[2] Before participating in the ride, Moser signed a document provided by the organizers entitled "Accident Waiver and Release of Liability" (the release), releasing the organizers and stating, "I acknowledge that this athletic event is an extreme test of a person's physical and mental limits and carries with it the potential for death, serious injury and property loss. The risks include, but are not limited to those caused by ... actions of other people including but not limited to participants.... I hereby assume all of the risks of participating & /or volunteering in this event." The organizer required riders to wear helmets and to have bicycle lights.
The ride had no designated start time. On the day of the accident, Moser and his friend, David Warshawsky (Warshawsky), began the ride at 4:00 a.m. At a rest stop, Moser and Warshawsky encountered Ratinoff, another participant in the ride. The three cyclists left the rest stop together, with Warshawsky and Ratinoff riding side by side and Moser riding behind them. At some point, they began riding single file.
Moser was cycling close to the right hand side of the road. Ratinoff said that she came from behind Moser's left side and passed him or rode at his left side. Moser said Ratinoff came up from behind him and rode next to him on his left side. While she was riding on Moser's left side, an Inyo County Sheriffs Deputy pulled his car approximately four or five car lengths behind them and stayed there for several minutes. Ratinoff turned to look at *201 the police car, and she then told Moser, "I have to come over." According to Ratinoff, a "split second" later, she moved to her right toward Moser.
As Ratinoff moved to her right, she made contact with Moser, who nevertheless was able to retain control of his bicycle. Within seconds, Ratinoff again collided with Moser, causing him to fall off his bike and to sustain injuries. At the time of the collision, Ratinoff and Moser were riding at an approximate speed of 15-20 miles per hour.

Moser sues Ratinoff, and Ratinoff files a motion for summary judgment
Moser commenced an action against Ratinoff and in his complaint alleged that Ratinoff "negligently, recklessly and carelessly operated, owned, controlled and maintained" her bicycle "so as to collide with" Moser's bicycle. Ratinoff alleged assumption of risk as an affirmative defense.
Ratinoff filed a motion for summary judgment in which she contended that she was not liable to Moser because under the primary assumption of risk doctrine she did not breach a duty of care owed to him. Moser, in opposition to the motion, argued that the primary assumption of risk doctrine does not apply to noncompetitive bicycle riding and that Ratinoff violated Vehicle Code sections 21202, subdivision (a) (operating a bicycle as close "as practicable to the right-hand curb or edge of the roadway"), and 22107 (moving a vehicle to the left or right "with reasonable safety"), thereby giving rise to a presumption of negligence and rendering the primary assumption of risk doctrine inapplicable.
The trial court granted the summary judgment motion and entered judgment against Moser. The trial court denied Moser's motion for new trial. Moser does not raise the denial of his new trial motion as a basis for his appeal.

STANDARD OF REVIEW
We review the grant of summary judgment de novo. (Szadolci v. Hollywood Park Operating Co. (1993) 14 Cal.App.4th 16, 19, 17 Cal.Rptr.2d 356.) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (Iverson v. Muroc Unified School Dist. (1995) 32 Cal.App.4th 218, 222, 38 Cal.Rptr.2d 35.) A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc, § 437c, subd. (p)(2).) Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 849, 853, 107 Cal. Rptr.2d 841, 24 P.3d 493.)
"When a defendant moves for summary judgment on the basis of implied assumption of the risk, he or she has the burden of establishing the plaintiffs primary assumption of the risk by demonstrating that the defendant owed no legal duty to the plaintiff to prevent the harm of which the plaintiff complains." (Freeman v. Hale (1994) 30 Cal.App.4th 1388, 1395, 36 Cal.Rptr.2d 418.) Determining whether the primary assumption of risk doctrine applies is a legal question to be decided by the court. (Knight, supra, 3 Cal.4th at p. 313, 11 Cal.Rptr.2d 2, 834 P.2d 696; Record v. Reason (1999) 73 Cal.App.4th 472, 479, 86 Cal.Rptr.2d 547.)

*202 DISCUSSION
A person is generally responsible "for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." (Civ.Code, § 1714.) But a defense to a claim of negligence is that the plaintiff either expressly or impliedly assumed the risk. (Knight, supra, 3 Cal.4th at pp. 308, fn. 4, 309-321, 11 Cal.Rptr.2d 2, 834 P.2d 696.)

I. Express assumption of risk
Before reaching the issue of implied assumption of risk, we must determine if Moser expressly assumed the risk of a collision based on the release he signed. An express assumption of risk is a complete defense to a negligence claim. (Knight, supra, 3 Cal.4th at p. 308, fn. 4, 11 Cal.Rptr.2d 2, 834 P.2d 696; Allan v. Snow Summit, Inc. (1996) 51 Cal.App.4th 1358,1372, 59 Cal.Rptr.2d 813; Allabach v. Santa Clara County Fair Assn. (1996) 46 Cal.App.4th 1007, 1012, 54 Cal.Rptr.2d 330.) Moser released the "event holders, sponsors and organizers," and also acknowledged the risks of the ride, including those caused by other participants. The document does not purport to be a release of anyone other than the "event holders, sponsors and organizers."
In Westlye v. Look Sports, Inc. (1993) 17 Cal.App.4th 1715, 22 Cal.Rptr.2d 781 (Westlye), the plaintiff, who was injured skiing, filed an action against the ski shop from which he rented allegedly defective ski equipment and the distributors of the equipment. He had signed a written agreement with the ski shop in which he accepted the equipment for use "as is"; agreed that he understood that there "`are no guarantee] for the user's safety'"; acknowledged that there is "`an inherent risk of injury in the sport of skiing, and the use of any ski equipment, and expressly assume[d] the risks for any damages to any persons or property resulting from the use of this equipment'"; and released the ski shop from any liability. (Id. at p. 1725, 22 Cal.Rptr.2d 781.)
The distributors of the equipment contended that "as a matter of law an express assumption of risk is good as against the whole world" and therefore precluded any liability against the distributors. (Westlye, supra, 17 Cal.App.4th at p. 1729, 22 Cal. Rptr.2d 781.) In holding that plaintiff had not released the distributors of the equipment, the court said, "defendants fail to submit, and we have not discovered, any authority for [the distributors'] proposition. The doctrine of express assumption of the risk is founded on express agreement. [Citations.] `Although in the academic literature "express assumption of risk" often has been designated as a separate, contract-based species of assumption of risk ..., cases involving express assumption of risk are concerned with instances in which, as the result of an express agreement, the defendant owes no duty to protect the plaintiff from an injury-causing risk.' [Citation.] Such an agreement, if valid, `operates to relieve the defendant of a legal duty to the plaintiff with respect to the risks encompassed by the agreement....' [Citation.] That express assumption of risk is founded on an express agreement undercuts the distributor defendants' claim that it is good as against the world.... [¶] ... [¶] We conclude the distributor defendants have failed to establish that they are entitled to the benefit of the written agreement between plaintiff and [the ski shop]." (Id. at pp. 1729-1730, 22 Cal.Rptr.2d 781.)
Westlye, supra, 17 Cal.App.4th 1715, 22 Cal.Rptr.2d 781, states the existing law that an express assumption of risk agreement does not inure to the benefit of those not parties to that agreement. Accordingly, *203 Moser did not expressly assume the risk of negligence by a coparticipant in the ride. A person's written acknowledgment of the risks inherent in an activity may, however, have an effect on determinations concerning implied assumption of risk. (See discussion post.)

II. Implied assumption of risk
The subject of implied assumption of risk has generated much judicial attention. Its modern history began when California eliminated contributory negligence and adopted a comparative negligence system in Li v. Yellow Cab Co. (1975) 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226. Thereafter, the California Supreme Courtin two companion cases, Knight, supra, 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, and Ford v. Gouin (1992) 3 Cal.4th 339, 11 Cal.Rptr.2d 30, 834 P.2d 724 (Ford)  considered the "proper application of the `assumption of risk' doctrine in light of [the] court's adoption of comparative fault principles." {Knight, supra, 3 Cal.4th at p. 300, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
In Knight, supra, 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, the Supreme Court, in a plurality opinion, set forth the doctrine of primary assumption of the risk. That doctrine, which is now established as "the controlling law" (Cheong v. Antablin (1997) 16 Cal.4th 1063, 1067, 68 Cal. Rptr.2d 859, 946 P.2d 817 (Cheong)), "embodies a legal conclusion that there is `no duty' on the part of the defendant to protect the plaintiff from a particular risk...." (Knight, supra, 3 Cal.4th at p. 308, 11 Cal.Rptr.2d 2, 834 P.2d 696.) When the doctrine applies, the plaintiffs assumption of the risk acts as a complete bar to liability. (Ibid.[3]
In Knight, supra, 3 Cal.4th 296, 11 Cal. Rptr.2d 2, 834 P.2d 696, the court concluded that a defendant owes no duty of care to protect a plaintiff against the risks inherent in a particular competitive sport (in that case, an informal touch football game) voluntarily played by the plaintiff, absent some reckless or intentional misconduct, but does owe a duty not to increase the risk of harm above that inherent in the sport. The court said that "[i]n some situations ... the careless conduct of others is treated as an `inherent risk' of a sport, thus barring recovery by the plaintiff." (Id at p. 316, 11 Cal.Rptr.2d 2, 834 P.2d 696.) In Ford the court applied the rule to noncompetitive, nonteamsporting activitiesin that case water skiing. (3 Cal.4th 339, 11 Cal.Rptr.2d 30, 834 P.2d 724.)
Whether the primary assumption of risk doctrine applieswhich issue is, as noted above, a question of law"depends on the nature of the sport or activity in question and on the parties' general relationship to the activity." (Knight, supra, 3 Cal.4th at p. 313, 11 Cal.Rptr.2d 2, 834 P.2d 696.) "The overriding consideration in the application of primary assumption of risk is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature." (Ferrari v. Grand Canyon Dories (1995) 32 Cal.App.4th 248, 253, 38 Cal.Rptr.2d 65.)

III. Activity subject to primary assumption of risk
In Knight, supra, 3 Cal.4th at page 309, 11 Cal.Rptr.2d 2, 834 P.2d 696, the court said that "whether the defendant owed a legal duty to protect the plaintiff from a *204 particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiffs conduct, but rather on the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport." The court suggested that generally, the primary assumption of risk doctrine applies in a "sports setting." (Id. at pp. 309-310, fn. 5, 11 Cal.Rptr.2d 2, 834 P.2d 696.) Thus, the issue in the instant case is whether an organized, noncompetitive, long-distance bicycle ride is one of those sports activities to which the primary assumption of risk doctrine applies.
The court in Staten v. Superior Court (1996) 45 Cal.App.4th 1628, 1635, 53 Cal. Rptr.2d 657, stated, "Knight may require a court to determine a question of duty in sports settings while factually uninformed of how the sport is played and the precise nature of its inherent risks." To make a decision concerning duty we must know the nature of a particular sport, and even if we do have such knowledge, we still may have no idea how imposing lability will affect or "chill" the sportwhich is a major factor in making a determination of duty. (See American Golf Corp. v. Superior Court (2000) 79 Cal.App.4th 30, 37, 93 Cal.Rptr.2d 683 [court said "expert opinion may inform the court on these questions"].) Nevertheless, under the current state of the law established by Knight, we must somehow make such a determination.
As guidance, there are cases in which courts have determined whether or not the primary assumption of risk applies to a particular activity. There are a number of cases involving sports activities in which the court found a primary assumption of risk. (Cheong, supra, 16 Cal.4th 1063, 68 Cal.Rptr.2d 859, 946 P.2d 817 [snow skiing]; Ford, supra, 3 Cal.4th 339, 11 Cal. Rptr.2d 30, 834 P.2d 724 [water skiing]; Knight, supra, 3 Cal.4th 296, 11 Cal. Rptr.2d 2, 834 P.2d 696 [touch football]; Sanchez v. Hillerich & Bradsby (2002) 104 Cal.App.4th 703, 128 Cal.Rptr.2d 529 [collegiate baseball]; Distefano v. Forester (2001) 85 Cal.App.4th 1249, 102 Cal. Rptr.2d 813 (Distefano) [off-roading]; Calhoon v. Lewis (2000) 81 Cal.App.4th 108, 96 Cal.Rptr.2d 394 [skateboarding]; American Golf Corp. v. Superior Court, supra, 79 Cal.App.4th 30, 93 Cal.Rptr.2d 683 [golf]; Lupash v. City of Seal Beach (1999) 75 Cal.App.4th 1428, 89 Cal.Rptr.2d 920 [lifeguard training]; Record v. Reason, supra, 73 Cal.App.4th 472, 86 Cal.Rptr.2d 547 [tubing behind a motorboat]; Littey v. Elk Grove Unified School Dist. (1998) 68 Cal.App.4th 939, 80 Cal.Rptr.2d 638 [wrestling]; Aaris v. Las Virgenes Unified School Dist (1998) 64 Cal.App.4th 1112, 75 Cal.Rptr.2d 801 [gymnastics stunt during cheerleading]; Balthazor v. Little League Baseball, Inc. (1998) 62 Cal.App.4th 47, 72 Cal.Rptr.2d 337 [little league baseball]; Domenghini v. Evans (1998) 61 Cal. App.4th 118, 70 Cal.Rptr.2d 917 [cattle roundup]; Mosca v. Lichtenwalter (1997) 58 Cal.App.4th 551, 68 Cal.Rptr.2d 58 [sport fishing]; Staten v. Superior Court, supra, 45 Cal.App.4th 1628, 53 Cal.Rptr.2d 657 [ice skating]; Fortier v. Los Rios Community College Dist. (1996) 45 Cal. App.4th 430, 52 Cal.Rptr.2d 812 [football practice drill]; Bushnell v. Japanese-American Religious & Cultural Center (1996) 43 Cal.App.4th 525, 50 Cal.Rptr.2d 671 [judo]; Regents of University of California v. Superior Court (1996) 41 Cal. App.4th 1040, 48 Cal.Rptr.2d 922 [rock climbing]; Ferrari v. Grand Canyon Dories, supra, 32 Cal.App.4th 248, 38 Cal. Rptr.2d 65 [river rafting]; O'Donoghue v. Bear Mountain Ski Resort (1994) 30 Cal. App.4th 188, 35 Cal.Rptr.2d 467 [snow skiing]; Stimson v. Carlson (1992) 11 Cal. App.4th 1201, 14 Cal.Rptr.2d 670 [sailing].) In some other recreational activities, *205 courts have held that there was no primary assumption of risk. (Shannon v. Rhodes (2001) 92 Cal.App.4th 792, 112 Cal. Rptr.2d 217 [boating passenger]; Bush v. Parents Without Partners (1993) 17 Cal. App.4th 322, 21 Cal.Rptr.2d 178 [recreational dancing].)
We have found no case that considers primary assumption of risk in connection with organized, noncompetitive, recreational bicycle riding. Nevertheless, this sport appears to fall within those activities to which these cases apply the assumption of risk doctrine. As the court in Record v. Reason, supra, 73 Cal.App.4th at page 482, 86 Cal.Rptr.2d 547, said upon "[compiling all of the distinguishing factors" from the cases, an activity is a "sport" to which the primary assumption of risk doctrine applies if that activity "is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury." That delineation is a useful one and covers the bicycle ride here.
It is true that bicycle riding is a means of transportationas is automobile driving. Normal automobile driving, which obviously is not an activity covered by the assumption of risk doctrine, requires skill, can be done for enjoyment, and entails risks of injury. But organized, long-distance bicycle rides on public highways with large numbers of riders involve physical exertion and athletic risks not generally associated with automobile driving or individual bicycle riding on public streets or on bicycle lanes or paths.[4] Bicycle rides of the nature engaged in by the parties here are activities done for enjoyment and a physical challenge. Moser acknowledged in the release he signed that the activity is "an athletic event that is an extreme test of a person's physical and mental limits and carries with it the potential for death, serious injury and property loss." In view of these considerations, the organized, long-distance, group bicycle ride qualifies as a "sport" for purposes of the application of the primary assumption of risk doctrine.

IV. Inherent risk
Even if the activity is one to which the primary assumption of risk applies, there are certain risks that are deemed not assumed, and certain injury-causing actions that are not considered assumed risks of the activity. The primary assumption of risk rule "does not grant unbridled legal immunity to all defendants participating in sporting activity. The Supreme Court has stated that"... it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport.' ( [Knight, supra,] 3 Cal.4th at pp. 315-316, [11 Cal.Rptr.2d 2, 834 P.2d 696], italics added.) Thus, even though `defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself,' they may not increase the likelihood of injury above that which is inherent. (Id at p. 315, [11 Cal. Rptr.2d 2, 834 P.2d 696].)" (Campbell v. Derylo (1999) 75 Cal.App.4th 823, 827, 89 Cal.Rptr.2d 519.) Conduct is not inherent in the sport if that conduct is "totally outside the range of ordinary activity involved in the sport ... [and] if the prohibition of that conduct would neither deter vigorous participation in the sport nor otherwise fundamentally alter the nature of the sport." (Freeman v. Hale, supra, 30 Cal.App.4th at p. 1394, 36 Cal.Rptr.2d 418.) A participant injured in a sporting activity by another participant may recover from that coparticipant for intentional infliction of injury or tortious behavior "so *206 reckless as to be totally outside the range of the ordinary activity involved in the sport" but not for mere negligence. (Knight, supra, 3 Cal.4th at pp. 320-321, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
Certain activities have been held not to be inherent in a sport and thus not subject to the primary assumption of risk doctrine. For example, drinking alcoholic beverages is not an activity inherent in the sport of skiing. (Freeman v. Hale, supra, 30 Cal. App.4th at p. 1388, 36 Cal.Rptr.2d 418.) On the other hand, in various sports, going too fast, making sharp turns, not taking certain precautions, or proceeding beyond one's abilities are actions held not to be totally outside the range of ordinary activities involved in those sports. (See Cheong, supra, 16 Cal.4th 1063, 68 Cal.Rptr.2d 859, 946 P.2d 817; Distefano, supra, 85 Cal. App.4th 1249,102 Cal.Rptr.2d 813; Record v. Reason, supra, 73 Cal.App.4th 472, 86 Cal.Rptr.2d 547.)
The analogies derived from the risks in other sports suggest that one cyclist riding alongside another cyclist and swerving into the latter is a risk that is inherent in a long-distance, recreational group bicycle ride.[5] The release Moser signed warns of the risk of accidents caused by the participants, thus indicating that such accidents are an inherent risk of the activity. If liability attached to entanglements and collisions among 600 bicycle riders, the recreational sport of an organized bicycle ride likely would be adversely affected.
Ratinoff's movements toward the right side of the road that caused her to collide with Moser may have been negligent, but they were not intentional, wanton or reckless or conduct "totally outside the range of ordinary activity involved in the sport." (Knight, supra, 3 Cal.4th at pp. 320-321, 11 Cal.Rptr.2d 2, 834 P.2d 696.) Therefore, the accident at issue in this case is within the assumed risks of the organized bicycle ride in which Moser and Ratinoff were engaged.[6]

V. Effect of statute
Moser asserts that the primary assumption of risk doctrine does not bar a claim when, as here, Ratinoff has violated statutes.

A. Pleading requirement

Moser's failure to allege in his complaint that defendant's conduct violated any statutory duties owed to plaintiff would, under Distefano, supra, 85 Cal.App.4th at page 1266, 102 Cal.Rptr.2d 813, procedurally bar plaintiff from raising the effect of a statutory violation in opposing a motion for summary judgment. Although this holding in Distefano appears inconsistent with long-standing authority that a plaintiffs allegations of negligence include statutory violations that constitute negligence per se (Brooks v. E.J. Willig Truck Transp. Co. (1953) 40 Cal.2d 669, 680, 255 P.2d 802; Karl v. C.A Reed Lumber Co. (1969) 275 Cal.App.2d 358, 361-362, 79 Cal.Rptr. 852), we need not determine this procedural issue because of our conclusion that the statutory violations do not, under present *207 law, preclude the assumption of risk doctrine.

B. Statutory violations do not displace the Knight rule

Moser contends that the defendant's violations of various Vehicle Code sections constitute negligence per se, and thus preclude the application of the primary assumption of risk doctrine. The California Supreme Court has addressed this issue in two casesFord, supra, 3 Cal.4th 339, 11 Cal.Rptr.2d 30, 834 P.2d 724, and Cheong, supra, 16 Cal.4th 1063, 68 Cal.Rptr.2d 859, 946 P.2d 817and has produced a number of opinions, leading one court to say "there appears to be no clear consensus on the high court about this issue." (Campbell v. Derylo, supra, 75 Cal.App.4th at p. 829, fn. 3, 89 Cal.Rptr.2d 519.) Nevertheless, a majority of the present California Supreme Court have expressed the view that a violation of a statute such as involved here does not displace the primary assumption of risk doctrine.
The lead opinion in Ford, supra, 3 Cal.4th 339, 11 Cal.Rptr.2d 30, 834 P.2d 724, which case involved a water-skiing accident, dealt with whether Harbors and Navigation Code section 658, subdivision (d),[7] coupled with the negligence per se doctrine (as codified in Evidence Code section 669),[8] established a rebuttable presumption that defendant breached his duty of care to plaintiff. That opinion concluded that the violation of Harbors and Navigation Code section 658 was inapplicable because plaintiff did not fall within the statute's protected class. (Id. at p. 350, 11 Cal.Rptr.2d 30, 834 P.2d 724.) Three of the justices found that plaintiff was within the class of persons Harbors and Navigation Code section 658 was intended to protect, and therefore, under Evidence Code section 669, defendant violated a legal duty of care to plaintiff. (Id. at pp. 364-369, 11 Cal.Rptr.2d 30, 834 P.2d 724 (cone. & dis. opn. of George, J.); id. at p. 369, 11 Cal. Rptr.2d 30, 834 P.2d 724 (dis. opn. of Mosk, J.).)[9] Three other justices who had disagreed with the Knight plurality opinion and would have "adhere[d] to the traditional consent approach" to assumption of risk (id. at p. 351, fn. 1, 11 Cal.Rptr.2d 30, 834 P.2d 724 (cone. opn. of Kennard, J.)), stated that the statute is not "the type of safety enactment that would preclude defendant[] from asserting assumption of risk as a defense barring plaintiff[] from recovering damages in his negligence action." (Id. at p. 363, 11 Cal.Rptr.2d 30, 834 P.2d 724 (cone. opn. of Kennard, J.).)
In Cheong, supra, 16 Cal.4th 1063, 68 Cal.Rptr.2d 859, 946 P.2d 817, two friends were skiing together and collided, resulting *208 in litigation. The trial court granted summary judgment in defendant's favor on the ground that a collision is an inherent risk of downhill siding. On appeal, plaintiff argued that defendant's violation of a county ordinance delineating the duties of skiers resulted in liability under Evidence Code section 669 and foreclosed the application of the primary assumption of risk doctrine. The ordinance expressly provided that a skier assumes the "inherent risks" of skiing, including the risk of collision with other skiers. (Id. at pp. 1069-1070, 68 Cal.Rptr.2d 859, 946 P.2d 817.) The majority held that the ordinance did not create any duty other than that available under common law. The court said that "a number of the justices who have signed this majority opinion" in Cheong questioned the conclusion of four justices in Ford that if the elements of Evidence Code section 669 were satisfied, a "statute creates tort liability between coparticipants in an active sport despite the Knight doctrine of primary assumption of risk." (Id. at p. 1071, 68 Cal.Rptr.2d 859, 946 P.2d 817.) The court added that the point need not be resolved because the elements of Evidence Code section 669 had not been met-the plaintiff had "not demonstrated that he is one of the class of persons the ordinance was intended to protect." (Ibid.) The court therefore affirmed the grant of summary judgment.
A concurring opinion, joined by two justices, expressed the view that "[t]he Knight standard of primary assumption of risk still applies even if the violation of an ordinance or statute, combined with Evidence Code section 669, creates a presumption of negligence." (Cheong, supra, 16 Cal.4th at p. 1079, 68 Cal.Rptr.2d 859, 946 P.2d 817 (cone. opn. of Chin, J.,[10] joined by Baxter, J. and Brown, J.).) A fourth justice stated that statutory obligation along with Evidence Code section 669 did not impose a duty of care when Knight eliminated a sports participant's duty of care. (Id. at p. 1074, 68 Cal. Rptr.2d 859, 946 P.2d 817 (cone. opn. of Kennard, J.).) Three justices took a contrary view, with one stating that the violation of a statute displaces the "no duty rule of Knight" (id. at p. 1073 & fn. 1, 68 Cal.Rptr.2d 859, 946 P.2d 817 (cone. opn. of Mosk, J.)) and the others stating that Evidence Code section 669 "may transform an appropriate statute into a legal duty of due care upon the defendant." (Id. at p. 1077, 68 Cal.Rptr.2d 859, 946 P.2d 817 (cone. opn. of Werdegar, J., joined by George, C.J.).)
The Supreme Court has not conclusively determined whether or not a violation of law can displace the primary assumption of risk doctrine. Nevertheless, four justices presently sitting on the California Supreme Court[11]a majorityexpressed the view that Evidence Code section 669 does not itself override Knight, but rather that one must ascertain whether the violated statute was intended to do so. Only two justices now on the court[12] have concluded that the violation of a safety statute or ordinance designed to protect persons in the position of a plaintiff precludes the application of the implied assumption of risk doctrine.
The appellate court in Distefano, supra, 85 Cal.App.4th 1249, 102 Cal.Rptr.2d 813, addressed this question. In that case, two men, one on a motorcycle and another in a dune buggy, were "off-roading." After *209 coming up opposite sides of a blind hill, they collided. Plaintiff contended that the Knight rule did not bar his action because defendant owed him statutory duties under Vehicle Code sections 38305 (proscribing driving off-road vehicles at an unreasonable or imprudent speed) and 38316 (proscribing driving off-road vehicles with a willful and wanton disregard for the safety of other persons or property). (Id at p. 1265,102 Cal.Rptr.2d 813.)
Although the court held that a claim based on a violation of a statute was barred for procedural reasons, the court proceeded to address the merits of the contention that the Vehicle Code, along with Evidence Code section 669, imposed a tort duty that rendered the primary assumption of risk doctrine unavailable. (Distefano, supra, 85 Cal.App.4th at pp. 1266-1267, 102 Cal.Rptr.2d 813.) The court stated that Vehicle Code sections 38305 and 38316, which provisions were enacted before the Supreme Court's decision in Knight, did not evince any legislative intent to supersede or modify an assumption of risk doctrine later declared by Knight. (Id at p. 1273, 102 Cal.Rptr.2d 813.) The court therefore concluded that the statutory provisions "do not abrogate the Knight primary assumption of the risk doctrine, and thus do not impose on participants in the sport of off-roading a higher or different duty in tort than is established under Knight." (Id. at p. 1274, 102 Cal. Rptr.2d 813.)
Because a majority of the current Supreme Court justices have expressed the view that a violation of a statute that indicates no legislative intent to eliminate the assumption of risk defense does not displace the primary assumption of risk doctrine, and because there are no cases inconsistent with that view, we adopt the Distefano court's conclusion. (85 Cal. App.4th 1249, 102 Cal.Rptr.2d 813.) Although the facts show that Ratinoff violated provisions of the Vehicle Code designed to protect persons using public roads, based on our conclusion as to the present state of the law, such violations do not nullify Moser's assumption of the risk.

CONCLUSION
Under the present state of the law, as applied here, the result is reasonable. By knowingly participating in a sporting event in which what occurred is an evident risk, Moser is not entitled to a recovery from Ratinoff.

DISPOSITION
The judgment is affirmed. Respondent shall recover costs on appeal.
We concur: TURNER, P.J., and GRIGNON, J.
NOTES
[1] We state the facts in accordance with the standard of review stated post.
[2] One of the forms refers to the promoter as "Badwater Adventure Sports."
[3] But see the Restatement Third of Torts, section 2 & comment i, pages 19, 25 ["Most courts have abandoned implied assumptions of risk as an absolute bar to a plaintiff's recovery"].
[4] We express no opinion as to such other forms of recreational bicycle riding.
[5] Cf. Mark v. Moser (Ind.Ct.App.2001) 746 N.E.2d 410 [inherent risk in a competitive cycling race is that a competitor may attempt to cut in front of a coparticipant to advance position].
[6] There are traffic-related risks that might not be considered inherent in the activity involved here, such as those involving automobile negligence. (See Story v. Howes (N.Y.App.Div. 1973) 41 A.D.2d 925, 344 N.Y.S.2d 10 ["mere riding of a bicycle does not mean the assumption of risk by the rider that he may be hit by a car"]; Bell v. Chawkins (1970) 62 Tenn.App. 213, 460 S.W.2d 850 [bicyclist did not assume risk dog would bite her].)
[7] Harbors and Navigation Code section 658 provides that no person shall operate a vessel so as to cause, among other things, water skis to collide with any object or person.
[8] Evidence Code section 669, subdivision (a), provides: "The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." (See also Vesely v. Sager (1971) 5 Cal.3d 153, 164-165, 95 Cal.Rptr. 623, 486 P.2d 151.)
[9] "Justice Arabian's [lead] opinion in Ford implicitly assumed, and the opinions of Justice George, joined by Chief Justice Lucas, and Justice Mosk expressly concluded, that if the four elements of section 669(a) were satisfied, that statute creates tort liability between coparticipants in an active sport despite the Knight doctrine of primary assumption of risk." (Cheong, supra, 16 Cal.4th at p. 1071, 68 Cal.Rptr.2d 859, 946 P.2d 817.)
[10] Justice Chin also authored the majority opinion.
[11] Justices Baxter, Kennard, Chin and Brown.
[12] Chief Justice George and Justice Werdegar.