Filed 3/6/14  Cal. Portable Ride Operators v. Cal. Div. of Occupational Safety CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CALIFORNIA PORTABLE RIDE OPERATORS, LLC et al., <br><br> Plaintiffs, Respondents, and Cross-Appellants, <br><br> v. <br><br> CALIFORNIA DIVISION OF OCCUPATIONAL SAFETY & HEALTH, <br><br> Defendant, Appellant, and Cross-Respondent. | B242219 <br><br> (Los Angeles County <br> Super. Ct. No. BC455252) |

APPEALS from a judgment and order of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge.  Affirmed.

Amy D. Martin, Chief Counsel, James Dexter Clark, Staff Counsel, for Defendant, Appellant, and Cross-Respondent.

Garrett & Jensen, Boyd F. Jensen II, for Plaintiffs, Respondents, and Cross-appellants, California Portable Ride Operators, LLC, Ray Cammack Shows, Inc., and Butler Amusements, Inc.

# INTRODUCTION

Defendant, appellant, and cross-respondent Division of Occupational Safety and Health (Division) appeals from a judgment in favor of plaintiffs, respondents, and cross-appellants, California Portable Ride Operators, LLC (CalPro), Ray Cammack Shows, Inc., and Butler Amusements, Inc. (plaintiffs) that declared invalid and unenforceable 8 CCR section 344.18 (section 344.18), a regulation purportedly authorized by Labor Code section 7904 (section 7904) that set inspection and annual flat fees for portable amusement rides. Plaintiffs appeal from an order denying their motion for attorney fees pursuant to Code of Civil Procedure section 1021.5 (section 1021.5). Because section 344.18 exceeded the scope of section 7904, we affirm the judgment. We affirm the order denying plaintiffs' attorney fees request because their financial stake in the outcome of their action was sufficient to justify the litigation in economic terms.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Portable amusement ride operators, known as carnivals, travel throughout the Unites States attending county fairs, festivals, rodeos, farmers' markets, and other amusement venues. In 1968, the California Legislature enacted the Amusement Rides Safety Law. (Lab. Code, § 7900.) Under the Amusement Rides Safety Law, the Division has the authority to formulate "regulations for adoption by the Occupational Safety and Health Standards Board for the safe installation, repair, maintenance, use, operation, and inspection of all amusement rides as the division finds necessary for the protection of the general public using amusement rides." (Lab. Code, § 7902.) The Division also has the authority to "fix and collect fees for the inspection of amusement rides that it deems necessary to cover the actual cost of having the inspection performed by a division safety engineer." (§ 7904, subd. (a).)

In 2009, the Division proposed increases to its amusement ride fee schedule to cover the cost of its inspection program. On January 20, 2011, following a Division

---

[1]    Because we hold that section 344.18 is void on its face, we provide a brief factual background.

2

Rulemaking Hearing and issuance of a Final Statement of Reasons, the Office of Administrative Law approved section 344.18 which increased the inspection fee for portable amusement rides from $125 to $195 per hour and imposed an annual flat fee to offset the Division's travel and administrative costs based on a ride's size or footprint and other factors. The annual flat fee was $25 for small rides, $365 for medium rides, $740 for large rides, and $1,475 for extra-large rides.

In February 2011, plaintiffs[2] filed a complaint that asserted a cause of action for declaratory relief that sought a declaration that section 344.18 was invalid and unenforceable. Plaintiffs requested a preliminary injunction enjoining enforcement of section 344.18 pending a determination of section 344.18's validity. Ray Cammack Shows, Inc. and Butler Amusements, Inc. also asserted a second cause of action for damages. The trial court granted plaintiffs' request for a preliminary injunction and enjoined enforcement of section 344.18.

After obtaining a preliminary injunction, plaintiffs filed a motion for summary adjudication with respect to its cause of action for declaratory relief. In their motion, plaintiffs argued that section 344.18 was invalid under Government Code section 11350, subdivision (b)(1) because its implementation was not supported by substantial evidence and it was not authorized by section 7904, subdivision (a); section 344.18 was invalid under Government Code section 11350, subdivision (b)(2) because the evidence shows that the regulation would have a "significant statewide adverse economic impact directly affecting business, including the ability of California businesses to compete with businesses in other states"; and section 344.18 was invalid under Government Code section 11350, subdivision (a) because there were substantial failures in the Division's compliance with the Administrative Procedure Act (Gov. Code, §§ 11340 et seq.).

---

**2** CalPro is a nonprofit entity or association of portable amusement ride operators. Its 29 members "service all 78 fairs that occur annually in the state of California, and countless other festivals and events, frequently sponsored by local governments, schools, churches, shopping malls, and other community organizations." Ray Cammack Shows, Inc. and Butler Amusements, Inc. are individual portable amusement ride operators.

The Division moved for summary judgment. In its motion, the Division argued that section 7904, subdivision (a) is not "self-executing" and section 344.18 is consistent with section 7904, subdivision (a) and is reasonably necessary to effectuate that section's purpose. The Division also argued that substantial evidence supported its determination that section 344.18 would not result in a statewide adverse economic impact directly affecting business.

The trial court simultaneously heard plaintiffs' summary adjudication motion and the Division's summary judgment motion, and ruled in favor of plaintiffs. The trial court ruled that the annual flat fee travel and administrative cost provision in section 344.18, subdivision (b), violated section 7904, subdivision (a). The trial court stated that section 7904, subdivision (a) permitted the Division to assess fees that were necessary to cover the *actual cost* of an inspection by a Division safety engineer. Subdivision (b) of section 344.18, on the other hand, permitted the Division to assess a yearly flat fee based on the size of the ride that was inspected. The trial court reasoned that there was no relationship between the annual flat fee and the Division's travel and administrative costs because the inspector's travel and administrative costs would not vary based on the size of the ride that was inspected—they would be the same regardless of the ride's size. Thus, because the annual flat fee was not directly related to the actual cost of an inspection, the regulation violated section 7904 and was invalid on its face. Thereafter, on the request of Ray Cammack Shows, Inc. and Butler Amusements, Inc. the trial court dismissed their second cause of action for damages and entered judgment in favor of plaintiffs on their cause of action for a declaration that section 344.18 is invalid and unenforceable.

Plaintiffs moved for an award of attorney fees pursuant to section 1021.5. The trial court denied the motion, stating, "I believe that the plaintiff does have the burden to show that the attorney's fees for litigation transcend the plaintiffs financial interest, and that did not occur here. This was brought for their own financial interests, for their own personal benefits as the ride operators to mitigate those costs. And I don't believe there is any real benefit for the public to justify the award of the attorney's fees, and they're denied."

4

## DISCUSSION

**I.    Section 7904, Subdivision (a) Did Not Authorize Section 344.18, Subdivision (b)**

The Division claims that the trial court erred by "introducing the new issue of the fee schedule's relationship to the amount of work the Division does," thus expanding the issues beyond those plaintiffs asserted in their complaint, and by requiring the Division to "show evidence on the record that there is a relationship between the graduated nature of the size and complexity fee [the 'Annual Fee'] and the amount of portable inspection work the Division does."[3]  Instead, the trial court narrowly considered whether section 7904, subdivision (a) authorized section 344.18, subdivision (b); properly granted plaintiffs' summary adjudication motion; and properly denied the Division's summary judgment motion.

### A.    Standards of Review

"In reviewing an order granting summary adjudication, 'we apply the same standard of review applicable on appeal from a grant of summary judgment.  [Citation.]'" (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 950.)  "We review the grant of summary judgment de novo.  (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].)  We make 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].)" (*Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1216.)  We must consider all of the evidence and all of the inferences reasonably drawn therefrom, and must view such evidence and such inferences in the

---

[3]    The Division also contends that other grounds that plaintiffs claim support the trial court's ruling are without merit.  Because we hold that the trial court properly ruled that section 7904, subdivision (a) did not authorize section 344.18, subdivision (b), we need not address those other grounds.

light most favorable to the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) Like a grant of summary adjudication, we review issues of statutory interpretation de novo. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683.)

### B. Relevant Principles

The primary goal in construing a statute is to ascertain legislative intent so as to effectuate the purpose of the law. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386.) "As with any statutory construction inquiry, we must look first to the language of the statute. 'To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent.' (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) If it is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it. (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 348 [158 Cal.Rptr. 350, 599 P.2d 656].) 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].)" (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047.)

"Of all the activities undertaken by an administrative agency, quasi-legislative acts are accorded the most deferential level of judicial scrutiny. [Citation.] '[A]dministrative agencies to which the Legislature has delegated regulatory authority in particular areas often develop a high degree of expertise in those areas and the body of law that governs them.' [Citation.]" (*Pulaski v. Occupational Safety and Health Standards Board* (1999) 75 Cal.App.4th 1315, 1331 (*Pulaski*).)

"Generally, ""[I]n reviewing the legality of a regulation adopted pursuant to a delegation of legislative power, the judicial function is limited to determining whether the regulation (1) is "within the scope of the authority conferred" . . . and (2) is "reasonably necessary to effectuate the purpose of the statute." . . .' . . . 'These issues do not present

a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with [a] strong presumption of regularity . . . .' . . . Our inquiry necessarily is confined to the question whether the classification is '*arbitrary, capricious or [without] reasonable or rational basis.*' . . .'" [Citation.] [¶] On the other hand, "'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void . . . .'" [Citation.]" (*Pulaski, supra,* 75 Cal.App.4th at pp. 1331-1332.)

 

  C.  *Sections 7904 and 344.18*

  Labor Code section 7904, subdivision (a) provides:

  "The division may fix and collect fees for the inspection of amusement rides that it deems necessary to cover the *actual cost* of having the inspection performed by a division safety engineer. The division may not charge for inspections performed by certified insurance inspectors or an inspector for a public entity, but may charge a fee of not more than ten dollars ($10) to cover the cost of processing the permit when issued by the division as a result of the inspection. All fees collected by the division under this section shall be deposited into the Elevator Safety Account to support the division's portable amusement ride inspection program." (Italics added.)

  Section 344.18, subdivision (a)[4] permits the Division to charge "Inspection Fees" of $195 per hour for actual inspection time—i.e., "all on-site work performed in

---

**4**  Section 344.18 provides:
  "(a) Inspection Fees.
  "(1) A fee of one hundred and ninety-five dollars ($195.00) per hour shall be charged for all on-site work performed in connection with audits, inspections, reinspections, and investigations pertaining to portable amusement rides. The Division shall bill an inspector's time in quarter-hour increments, rounded up to the nearest quarter hour.
  "(2) Fees shall be charged for actual inspection time. Actual inspection time begins from the time a Division engineer arrives, generally by appointment, in the area where the Division's information indicates the inspection is to be conducted, and continues until the engineer has completed the Division's report and is ready to leave the area.

"(3)  The Division shall not bill at the hourly rate for an inspector's travel time in connection with routine inspections.  However, if the owner or operator of a portable amusement ride or rides, or his or her designee, fails to appear at the designated site for a scheduled inspection, or is not ready for the inspection at the designated time, and the Division is therefore required to reschedule the inspection, the Division may bill for the time its inspector spends traveling to the site of the rescheduled inspection(s) at the one hundred and ninety-five dollar ($195.00) hourly rate.

"(b)  Annual Fee.  In addition to the hourly fee for inspections, reinspections and investigations, each portable amusement ride shall pay an annual fee to offset the Division's travel and administrative costs.  The Division shall base the amount of the annual fee on the classification of the portable amusement ride as either 'Class I (Small),' 'Class II (Medium),' 'Class III (Large),' or 'Class IV (Extra Large),' as follows:

"(1)  Small rides—Twenty-five dollars ($25.00)

"(2)  Medium rides—Three hundred and sixty-five dollars ($365.00)

"(3)  Large rides—Seven hundred and forty dollars ($740.00)

"(4)  Extra-large rides—One thousand four hundred and seventy-five dollars ($1,475.00).

"(c)  Classification of Portable Amusement Rides.  For purposes of this section, each portable amusement ride shall be classified according to the criteria set forth below.  A ride will be placed into the largest classification for which it satisfies two or more of the evaluation criteria.  However, if a portable amusement ride satisfies any single criterion in a classification, then the ride cannot fall into a classification more than one classification below, even if it satisfies two or more criteria in a lower classification.

"(1)  Class I (Small):  A portable amusement ride shall be classified as 'Small' if it:

"(A) has a footprint of 699 square feet, or less.  (For purposes of this section, a 'ride footprint' is the surface area, expressed in square feet, that is covered by the ride, itself, and does not include the passenger waiting area or queuing area);

"(B) operates at ten or fewer revolutions per minute ('RPM');

"(C) is a 'Kiddie Coaster' (a ride designed for children age 12 or younger).

"(2)  Class II (Medium):  A portable amusement ride shall be classified as 'Medium' if it:

"(A) has a footprint of greater than 699 square feet and up to and including 2,000 square feet;

"(B) is a non-elevated ride that carries its own means of propulsion while towing one or more units (i.e., trains);

"(C) elevates passengers up to sixty and including 60 feet off the ground.

"(3)  Class III (Large):  A portable amusement ride shall be classified as 'Large' if it:

"(A) has a footprint of greater than 2,000 and up to and including 8,000 square feet;

8

connection" with portable amusement ride inspections. Subdivision (b) of section 344.18 permits the Division to collect an "Annual Fee" the purpose of which is "to offset the Division's travel and administrative costs." The "Annual Fee," a graduated flat fee based on a ride's size—determined by the square feet of the ride's footprint and other factors—is $25 for small rides, $365 for medium rides, $740 for large rides, and $1,475 for extra-large rides. (§ 344.18, subds. (b) & (c).)

### D. Analysis

Section 7904, subdivision (a) authorizes the Division to "fix and collect" an inspection fee for amusement rides. That inspection fee must be the fee that the Division deems necessary to cover the "actual cost" of having a Division safety engineer inspect an amusement ride. Section 344.18, subdivision (a) permits the Division to charge an inspection fee for portable amusement rides of $195 per hour for actual inspection time. Subdivision (b) of section 344.18 goes farther. It permits the Division to collect an additional graduated annual flat fee to offset the Division's travel and administrative costs that is based on a ride's size. The increase in fee in issue only concerns the "travel and administrative costs" specified in subdivision (b) of section 344.18.

Section 7904 does not expressly authorize the Division to "fix and collect" an annual fee to offset the Division's travel and administrative costs. Under section 7904,

---

"(B) elevates passengers higher than 60 feet and up to 120 feet off the ground, and/or travels a distance of up to and including 1,500 feet;

"(C) consists of more than 50 units and/or has a capacity equal to, or greater than, 50 passengers;

"(4) Class IV (Extra-Large): A portable amusement ride shall be classified as 'Extra-Large' if it:

"(A) has a footprint of greater than 8,000 square feet;

"(B) elevates passengers higher than 120 feet off the ground and/or travels a distance of greater than 1,500 feet;

"(C) has complex features or controls (i.e., programmable logic controllers with safety features that interface with computer controllers or similar features or controls).

"(d) The Division will charge no fee for an inspection performed by a certified insurance inspector except a charge of $10.00 to cover the cost of processing the permit to operate."

9

the Division can charge a fee for travel and administrative costs only if those costs reflect the "actual cost" of those activities in connection with an amusement ride inspection. The fee the Division implemented with subdivision (b) of section 344.18, however, is an annual flat fee that is not based on the "actual cost" of a ride's inspection but on the ride's size. The Division's cost of travel illustrates this point. A ride's size is not a factor in the "actual cost" to travel to a site to inspect a ride. That is, the cost to travel from point A to point B to inspect a ride does not increase if the inspector is to inspect a large ride rather than a small ride. Accordingly, section 344.18, subdivision (b) improperly enlarges the scope of section 7904, subdivision (a) and the trial court did not err in ruling that the regulation is "facially invalid." (*Pulaski, supra,* 75 Cal.App.4th at p. 1332.)

## II. The Trial Court Did Not Abuse Its Discretion In Denying Plaintiffs' Attorney Fees Request

Plaintiffs contend that the trial court abused its discretion in denying their request for $164,812.37 in attorney fees pursuant to section 1021.5. The trial court did not err in ruling that plaintiffs were not entitled to recover their attorney fees.

### A. *Standard of Review*

"We review an attorney fee award under section 1021.5 generally for abuse of discretion. Whether the statutory requirements have been satisfied so as to justify a fee award is a question committed to the discretion of the trial court, unless the question turns on statutory construction, which we review de novo. [Citations.]" (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 152.)

10

B.      *Application of Relevant Principles*

Section 1021.5[5] "codifies the 'private attorney general' doctrine under which attorney fees may be awarded to successful litigants. 'The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]' [Citation.] Entitlement to fees under section 1021.5 requires a showing that the litigation: '(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter.' [Citation.]" (*California Licensed Foresters Assn. v. State Bd. of Forestry* (1994) 30 Cal.App.4th 562, 568-569, fn. omitted (*California Licensed Foresters Assn.*).)

"[T]he purpose of section 1021.5 is not to compensate with attorney fees only those litigants who have altruistic or lofty motives, but rather all litigants and attorneys who step forward to engage in public interest litigation when there are insufficient financial incentives to justify the litigation in economic terms." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1211.) "The method for weighing costs and benefits [of litigation] is illustrated in *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1 [232 Cal.Rptr. 697] (*Los Angeles Police Protective League* ). 'The trial court must first fix—or at least estimate—the monetary value of the benefits obtained by the successful litigants themselves. . . . Once the court is able to put some kind of number on the gains actually attained it must discount these total benefits by

---

**5**      Section 1021.5 provides, in relevant part, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

some estimate of the probability of success at the time the vital litigation decisions were made which eventually produced the successful outcome. . . . Thus, if success would yield . . . the litigant group . . . an aggregate of $10,000 but there is only a one-third chance of ultimate victory they won't proceed—as a rational matter—unless their litigation costs are substantially less than $3,000. [¶] After approximating the estimated value of the case at the time the vital litigation decisions were being made, the court must then turn to the costs of the litigation—the legal fees, deposition costs, expert witness fees, etc., which may have been required to bring the case to fruition. . . . [¶] The final step is to place the estimated value of the case beside the actual cost and make the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case. . . . [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' (*Los Angeles Police Protective League, supra,* 188 Cal.App.3d at pp. 9-10.)" (*Conservatorship of Whitley, supra,* 50 Cal.4th at pp. 1215-1216; *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321 [when the plaintiff has no pecuniary interest in outcome of the litigation, the financial burden element has been established].)

In their motion for attorney fees, plaintiffs did not estimate the financial benefit of their victory. In its opposition to plaintiffs' motion, the Division estimated the present value of the victory to CalPro members—the estimate projected the financial benefit over a number of years—to be $1,277,785.[6] In their reply in support of their motion, plaintiffs argued that CalPro alone was responsible for attorney fees in this case, CalPro did not pay inspection fees because it was not a portable amusement ride operator, and, thus, CalPro did not financially benefit from the litigation. As stated above, the trial court denied plaintiff's motion for attorney fees on the grounds that plaintiffs failed to show that the attorney fees "transcended" their financial interest in the litigation and the public did not benefit from the litigation.

---

**6** For reasons unclear from the record, the Division based its calculation on a CalPro membership of 19 ride operators as opposed to CalPro's stated 29 ride operators.

On appeal, CalPro argues that the trial court erred in finding that plaintiffs had a financial interest in this case and that plaintiffs failed to show that the attorney fees for the case exceeded that financial interest.[7] CalPro argues that it was the only plaintiff responsible for paying attorney fees and it did not financially benefit from this litigation because it was not a portable amusement ride operator that was subject to section 344.18's fees. For purposes of our analysis, we will assume, without deciding, that the trial court's ruling on plaintiffs' motion for attorney fees properly is analyzed considering only CalPro's financial interest in the litigation because it alone was responsible for paying the attorney fees.

The Court of Appeal in *California Licensed Foresters Assn., supra,* 30 Cal.App.4th 562 considered and rejected plaintiffs' argument that CalPro, by virtue of its status as a nonprofit entity or association of portable ride operators, did not have a financial interest in the litigation. In that case, the plaintiff, California Licensed Foresters Association (CLFA), a nonprofit association of registered professional foresters, challenged emergency regulations and guidelines adopted by the California State Board of Forestry without notice or public hearing and, as the prevailing party, was awarded its attorney fees under section 1021.5. (*California Licensed Foresters Assn., supra,* 30 Cal.App.4th at pp. 565, 567-568.) In reversing the award of attorney fees, the Court of Appeal rejected CLFA's argument that "it had no personal motivation for bringing this action because, as an entity separate from its members, CLFA had no financial stake in the outcome." (*Id.* at p. 570.) The court held, "In its representative capacity, CLFA had a financial stake in pursuing this matter to the same extent as its members. CLFA's very existence depends upon the economic vitality of its members and any benefit or burden derived by CLFA from this lawsuit ultimately redounds to the membership." (*Ibid.*)

---

[7] Plaintiffs also argue that the trial court erred in finding that their action did not benefit the public. Because we affirm the trial court's denial of attorney fees based on its finding that plaintiffs failed to demonstrate the requisite financial burden to justify an award of attorney fees, we do not need to decide whether plaintiffs' action benefited the public.

13

CalPro is funded by its 29 members. Thus, like the plaintiff in *California Licensed Foresters Assn., supra,* 30 Cal.App.4th 562, CalPro's very existence depended upon the economic vitality of its members, and it thus had the same financial stake in pursuing this case as its members. (*Id.* at p. 570.) Because CalPro had a financial incentive to pursue the litigation—overturning the annual flat fee assessed its members under section 344.18—that was not out of proportion to the attorney fees incurred,[8] the trial court did not abuse its discretion in ruling that CalPro was not entitled to an award of its attorney fees. (*Collins v. City of Los Angeles, supra,* 205 Cal.App.4th at p. 152; *Conservatorship of Whitley, supra,* 50 Cal.4th at p. 1211.)

---

[8] The only estimate in the record of the financial benefit of plaintiffs' victory to CalPro's membership is the Division's estimate of $1,277,785. Plaintiffs noted in their reply brief in support of their motion for attorney fees that the Division, in the Rulemaking File submitted in support of section 344.18's enactment, estimated that section 344.18's "Proposed Billing Fee Structures" would result in a $16,300 annual increase in fees to large ride operators such as Ray Cammack Shows, Inc. and Butler Amusements, Inc.

## DISPOSITION

The judgment and order are affirmed. Plaintiffs and the Division are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.

We concur:


TURNER, P. J.


MINK, J.*

---

\*      Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.